IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

                                                                    **REPORT AND**
                                                                     **RECOMMENDATION**

v.

ALEXAI ROGOZIN,                                                    09-CR-379(S)(M)

                     Defendant.
_____

        This case was referred to me by Hon. William M. Skretny for supervision of all pretrial proceedings [2].[1] Defendant is charged in an indictment with possession and transportation of child pornography [1], and has moved for various forms of relief, including suppression of physical evidence and statements [21].[2]

        An evidentiary hearing was held on May 25 and July 28, 2010 [33, 48], at which the government offered the testimony of Customs and Border Protection ("CBP") field inspector Kevin Janiszeski, CBP officer Brian LaRosa and supervisor Daniel Pelczynski, and Immigration and Customs Enforcement ("ICE") special agent Matthew Meyer. Defendant called no witnesses. Following the hearing, the parties filed post-hearing submissions [39, 42, 43], and oral argument was held on October 28, 2010 [49].

        For the following reasons, I recommend that the motion be granted in part and denied in part.

---

    [1]        Bracketed references are to CM-ECF docket entries.

    [2]        Defendant acknowledges that the issues raised by his motion (other than suppression) have been resolved [50].

**BACKGROUND**

Officer Janiszeski encountered defendant entering the United States at the Lewiston, New York port of entry on the morning of August 30, 2009 ([33], pp. 11-12). Defendant was alone in his vehicle (id., p. 12). He asked defendant's citizenship, and defendant did not respond right away, possibly due to language barriers (id.). Defendant eventually stated that he was a citizen of Germany, produced a lawful U.S. permanent resident card, and said that he resided in Brooklyn (id.). In response to further questioning, he stated that he had visited Niagara Falls, Canada overnight as a tourist, and was not bringing anything back (id., p. 13). He stated that he did not know or visit anyone in Canada (id.).

During the initial interview, which lasted approximately a minute and a half, Officer Janiszeski noted that defendant's responses were hesitant, and he did not maintain eye contact (id., p. 14). Due to the lack of details in defendant's answers, his lack of eye contact, and the short length of his stay in Canada, which appeared curious, given that defendant had come all the way from Brooklyn, officer Janiszeski referred defendant to a secondary inspection (id., pp. 15-16). He explained to officer Brian LaRosa, who was conducting the secondary inspection, why he was sending defendant for that inspection (id., p. 18). At that time, he did not suspect defendant of possessing child pornography (id., p. 29).

Officer LaRosa conducted the secondary inspection of defendant's vehicle after defendant was escorted into the main building (id., p. 40). He stated that one of his duties is to prevent contraband from coming into the United States, and that he routinely searches cameras, electronic devices, and luggage (id., pp. 43-44). He conducted a "seven-point inspection" of the

vehicle itself as well as its contents (id.). He looked at a digital camera and noticed that it contained photos of small children in sexually suggestive positions (id., pp. 40-41). He then viewed another camera, a laptop computer and a cell phone, all of which had similar photos (id., p. 41). He either turned on the computer or it was already on, and stated that to his knowledge, no password was required to view the photos (id., pp. 43, 57, 66).[3]

He also viewed the video camera, which had similar images (id., p. 55). He did not see anything which would constitute child pornography on either the camera or the video camera (id., pp. 56, 62). The children in the photos he viewed were in sexually suggestive positions, but not naked (id., p. 58).

He contacted his supervisor (Daniel Pelczynski), who ended the search and authorized a patdown search of defendant, and contacted ICE (id., pp. 42, 44). Defendant underwent a full body patdown after he had been placed in a cell and removed his belt, shoes, and emptied his pockets (id., p. 45). Defendant was not free to leave (id., pp. 69, 77, 92, 134). He was not given Miranda warnings (id., pp. 69, 92, 134). Although he was not told why he was being detained (id., pp. 69-70, 92), he was detained because he was suspected of criminal activity (id., p. 78).

---

[3] Although defendant and his attorney submitted affidavits suggesting that the computer could not be accessed without a password ([21], ¶¶112-13, [22], ¶29), defendant chose not to testify at the hearing. "Absent his live testimony and the opportunity for cross- examination, the Court cannot assess his credibility or truthfulness. As a result, I credit the testimony of the live witnesses over the contents of defendant's affidavit where a conflict exists." United States v. Chisholm, 2008 WL 5453242, *2 (E.D.N.Y. 2008), adopted as modified, 2009 WL 299313 (E.D.N.Y. 2009).

When ICE agents Meyer and Braisted arrived, Officer LaRosa told them about the images which he had found (id., p. 71), and turned the electronic devices over to them (id., p. 73). Agents Meyer and Braisted reviewed photos on defendant's laptop before questioning him (id., p. 94). They saw some images of naked children, and others in provocative poses (id., p. 108). They began to interview defendant in the holding cell, then took him to an office where they continued the interview with the assistance of an interpreter by speakerphone (id., p. 111).

Agent Meyer stated that the purpose of the interview was to establish defendant's admissibility into the United States, and to prevent the entry of contraband such as child pornography (id., pp.112-13). They asked him whether he had seen child pornography on the computer and who had access to the computer. He told them that he owned the computer, that no one else had access, and that he had seen child pornography on it (id., p. 113). They also asked him whether there was a password (id., p. 125). He told them the password (id., p. 134). He did not ask to stop the interview, nor did he request an attorney (id., p. 114). They did not threaten or coerce him, nor did they promise anything (id.).

Once the interview concluded, they decided to retain the laptop and other electronic devices for a forensic search (id., pp. 114-15), and defendant was allowed to enter the United States (id., p. 115). The August 30 inspection did not reveal any images that could definitely be characterized as child pornography ([48], p. 40). Agent Meyer testified that although he did not have probable cause on August 30 to believe that the laptop contained child pornography, he did have reasonable suspicion ([33], p. 140).

The forensic inspection of the laptop at the ICE office on September 3, 2009 revealed photos of "pretty obvious" child pornography, which led them to apply for a search

warrant on September 23 ([48], pp. 6-7). The photos observed on September 3 were "more obvious" than those previously observed, and depicted acts of fellatio and intercourse between young children and adults (id., p. 8). They "flagged" approximately 185 images of child pornography during that inspection (id., p. 9).

They eventually applied for a search warrant on the computer, but not the camera, video recorder, or I-phone (id., p. 22). Although no pornography was observed on the video recorder, they seized or detained it (id., pp. 24-25).[4] He explained that an item is detained for inspection, and then seized if contraband is found on it (id., p. 29).

Following the full computer search, defendant was arrested at his home in Brooklyn on November 16, 2009 (id., pp. 120-21). He was taken to the ICE office where, after Miranda warnings were administered, he gave additional statements (id., pp. 122-25).

## ANALYSIS

**A.      Suppression of Physical Evidence**

"It is well established that the government has broad powers to conduct searches at the border even where . . . there is no reasonable suspicion that the prospective entrant has committed a crime . . . . Routine searches of the persons and effects of entrants are not subject to any requirement of reasonable suspicion, probable cause, or warrant". Tabbaa v. Chertoff, 509 F.3d 89, 97-98 (2d Cir. 2007) (affirming 2005 WL 3531828 (W.D.N.Y. 2005) (Skretny, J.)). "A suspicionless search at the border is permissible under the Fourth Amendment so long as it is

---

[4] The record does not clearly indicate whether the camera and I-phone are still in the government's possession.

considered to be 'routine' . . . . The precise line between what is routine and what is not routine, however, has not been clearly delineated." Id. However, it is well settled that "searches of a person's luggage or personal belongings are routine searches". United States v. Irving, 452 F.3d 110, 123-24 (2d Cir. 2006).

While the Second Circuit has not directly addressed whether a border search of a computer or other electronic device is considered routine or non-routine, other circuits have held that reasonable suspicion is not required for the search.[5] See, e.g., United States v. Arnold, 533 F.3d 1003, 1008 (9th Cir. 2008) (computer); United States v. Ickes, 393 F.3d 501, 506 (4th Cir. 2005) (computer); United States v. Linarez-Delgado, 259 Fed. Appx. 506, 507-08, 2007 WL 4525200 (3rd Cir. 2007) (camcorder).

However, even if the border search is considered "non-routine", it is valid "if it is supported by reasonable suspicion". Irving, 452 F.3d at 124. "[F]actors that courts may consider in making the reasonable suspicion determination, includ[e] unusual conduct of the defendant, discovery of incriminating matter during routine searches, computerized information showing propensity to commit relevant crimes, or a suspicious itinerary." Id.

With these principles in mind, I will consider the motion to suppress evidence obtained from the laptop computer, and from the video recorder, I-phone and camera.

---

[5] This issue is the subject of ongoing debate. See New York Times editorial entitled "Searching Your Laptop", November 16, 2010.

1.  **The Laptop Computer**

I need not decide whether or not the search of the laptop computer can be considered "routine", because even if it was not, defendant's failure to maintain eye contact during the initial interview, coupled with his questionable itinerary (spending only one night in the area after driving from Brooklyn), were sufficient to create reasonable suspicion in the mind of inspector Janiszeski (Irving, supra), which would justify examining the laptop during the secondary inspection.

In turn, the discovery of suggestive photos of children justified the further inspection on September 3, 2009, which revealed pornographic photos of children on the laptop. The four-day delay between the initial inspection on August 30 and the follow-up inspection on September 3 does not invalidate the search. *See* United States v. Hanson, 2010 WL 2231796, **4-5 (N.D.Cal. 2010) (17 day delay proper); United States v. Shanaja, 430 F.3d 1049, 1053-54 (9th Cir. 2005) (8 day delay proper).

Discovery of the pornographic images on September 3, 2009 created probable cause to obtain the warrant authorizing search and seizure of the laptop. The fact that the warrant was not applied for until September 23, 2009 is irrelevant, because the laptop, having been determined to contain contraband during the search on September 3, could not have been released into the country in any event, and the photos observed on September 3 were properly observed even without a warrant.

Therefore, I recommend that the motion be denied to the extent that it seeks suppression of evidence obtained from the laptop computer.

## 2. The Video Recorder, I-phone and Camera

I take a different view with respect to the video recorder, I-phone and camera. While these devices were found to contain photos or videos of children in "suggestive poses", the government's witnesses could not characterize them as child pornography. *See* United States v. Various Articles of Obscene Merchandise, Schedule 1724, 460 F.Supp. 826, 830 (S.D.N.Y. 1978), in which the court, considering photographs "in which the child is not shown to be engaged in sexual activity or lewd display", held that "[n]udity or provocative presentation do not render a work obscene".

Moreover, the government offers no legitimate excuse continuing to hold the video recorder for this length of time without seeking a warrant.[6] The government itself has submitted CBP Guidelines [43] which state that "[u]nless extenuating circumstances exist, the detention of devices should not exceed five (5) days", and that "if, after reviewing the information . . . there is no probable cause to seize it, any copies of the information must be destroyed, and any electronic device must be returned" (id., p. 4, §§ 5.3.1, 5.3.1.2).

"To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." Herring v. United States, 129 S.Ct. 695, 702 (2009). Since the government has significantly exceeded the deadlines imposed by its own guidelines for return of the equipment, its conduct is sufficiently deliberate and culpable to warrant suppression of all evidence obtained from defendant's video recorder, I-phone and camera. *See* United States v.

---

[6] As stated previously, the record does not clearly indicate whether the camera and I-Phone are also still in the government's possession.

Cotterman, 2009 WL 465028, *8 (D.Ariz. 2009) ("The Government's disregard of the Fourth Amendment in connection with border searches of electronic media is emphasized by the Government's continued possession of a copy of Mrs. Cotterman's hard drive . . . . If there is probative information on the hard rive, seventeen months is more than enough time to determine that . . . . At this point in time, any incriminating evidence found now on the copy of Mrs. Cotterman's hard drive would be inadmissible because that hard drive was not subject to seizure for containing contraband").

Therefore, I recommend that this evidence be suppressed.

**B.     Suppression of Statements**

   **1.     Border Interview Statements**

In arguing that defendant's statements given to ICE agents Meyer and Braisted on August 30, 2009 should not be suppressed for lack of Miranda warnings, the government notes that such warnings "are not required where a person is questioned in a routine border crossing inquiry". Government's Post-Hearing Memorandum [42], p. 27.

However, such warnings *are* required "in border interrogations when the questioning of the official becomes an interrogation that is custodial in nature and is one in which information is sought for the purpose of using it against a person in a criminal proceeding." United States v. Silva, 715 F.2d 43, 47-48 (2d Cir. 1983). For example, in United States v. Moody, 649 F.2d 124 (2d Cir. 1981), the defendant was pulled out of an arriving passenger line at an airport, taken to a separate room and given a patdown search which revealed a plastic bag containing a powdery substance. "When asked what the substance was in the plastic bag, appellant's response, 'it is heroin' was elicited for the purpose of incriminating her. This

conclusion would seem to flow from Officer Hanson's initial suspicions which led to further questioning and a patdown. It would thus appear that appellant's Miranda rights were violated and her statement inadmissible." Id. at 128.

Similarly, in United States v. Piggott, 1994 WL 228626, *8 (W.D.N.Y. 1994), Judge Skretny ordered the suppression of defendant's statement as to his identity during a border inquiry for lack of Miranda warnings: "Ringler's questioning of defendant about his identity was likely to elicit (and did elicit) incriminating information about defendant's immigration status, as well as defendant's alleged use of a falsified passport . . . . Furthermore, Ringler had already verified defendant's identity through an FBI fingerprint check. Therefore, the further questioning about defendant's identity was unnecessary and was not simply part of a routine booking inquiry. In addition, under the circumstances of this case, the question related to an element of the charges."

As in Moody and Piggott, by the time defendant was questioned by ICE agents Meyer and Braisted, this was no longer a "routine border inquiry". By that time, they had spent a considerable length of time examining the photos on his laptop, and he "was a suspect of criminal activity"([33], p. 78). He had been placed in a cell and had his belt and shoes removed, and was given a patdown search.

Although the government claims that defendant was asked about the computer password "to help establish [his] ownership of the computer" (government's Post-Hearing Memorandum [42], p. 7), that questioning "was unnecessary" (Piggott, supra), since he had by then already told the agents that he was the owner ([33], p. 113). Under the circumstances, it appears that the questioning as to who had access to the computer and whether he had seen

images of child pornography on the computer "was elicited for the purpose of incriminating" defendant, as in Moody, and "related to an element of the charges", as in Piggott.

Moreover, defendant's statement as to the password was testimonial in nature. See United States v. Kirschner, 2010 WL 1257355, *3 (E.D.Mich. 2010) ("Forcing the Defendant to reveal the password for the computer communicates that factual assertion to the government, and thus, is testimonial-it requires Defendant to communicate 'knowledge,' unlike the production of a handwriting sample or a voice exemplar").

Therefore, I recommend that these statements be suppressed.

### 2. Post-Arrest Statements

Defendant gave additional statements on November 16, 2009, following his arrest and the administration of Miranda warnings. He argues that these statements should be suppressed as the "fruit of the poisonous tree" ([33], p. 6). The "question in such a case is whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." Wong Sun v. United States, 371 U.S. 471, 488 (1963).

Even if defendant's initial statements should be suppressed, the pornographic photos discovered during the search of his laptop furnished probable cause for his arrest, and defendant does not argue that the post-arrest questioning was otherwise improper. Therefore, these statements should not be suppressed.

C.  **Destruction of the Laptop Computer**

Shortly after the conclusion of the evidentiary hearing on July 28, 2010, counsel for the government advised that she had just learned the laptop computer has been destroyed by ICE, but that a "mirror image" of its contents had been prepared before it was destroyed. During a conference with counsel on August 5, 2010, I set a deadline of September 30, 2010 for filing of "any defense motions relating to the destruction of the laptop computer" [37]. At the request of defendant's attorney, that deadline has now been extended to November 22, 2010, and a briefing schedule has been set [51].

Therefore, this Report and Recommendation is made without prejudice to defendant's right to argue (in the motion to be filed by November 22, 2010) that suppression is warranted due to the destruction of the laptop computer, or to the government's right to oppose that motion.

## CONCLUSION

For these reasons, and subject to the determination of defendant's motion based upon the destruction of the laptop computer, I recommend: (1) that defendant's statements to ICE agents Meyer and Braisted on August 30, 2009 be suppressed; (2) that all evidence from the video recorder, I-phone and camera be suppressed; and (3) that the remainder of defendant's motion [21] be denied.

If defendant files a motion for suppression based on the destruction of the laptop computer by November 22, 2010, then the deadline for filing objections to this Report and Recommendation will be concurrent with the deadline for filing objections to the Report and

Recommendation concerning that motion. However, if defendant does not file that motion by November 22 2010, then objections to this Report and Recommendation must be filed with the clerk of this court by December 3, 2010 (applying the time frames set forth in Fed. R. Crim. P. 45(a)(1)(C), 45(c), and 59(b)(2)). Any requests for extension of this deadline must be made to Judge Skretny. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". <u>Wesolek v. Canadair Ltd.</u>, 838 F. 2d 55, 58 (2d Cir. 1988); <u>Thomas v. Arn</u>, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. <u>Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co.</u>, 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2(a)(3) of the Local Rules of Criminal Procedure for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." Failure to comply with the provisions of Rule 58.2(a)(3) may result in the district judge's refusal to consider the objection.

**SO ORDERED.**

DATED: November 16, 2010

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge